IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LABORATORY CORPORATION OF AMERICA HOLDINGS,<br><br>          Plaintiff,<br><br>     v.<br><br>PAUL DORAN and<br>NATERA, INC.,<br><br>          Defendants. | CASE NO. _____<br><br>**COMPLAINT** |

Plaintiff, Laboratory Corporation of America Holdings ("Plaintiff" or "Labcorp"), by its undersigned counsel, as and for its Complaint against Paul Doran ("Doran") and Natera, Inc. ("Natera") (collectively, the "Defendants"), alleges as follows.

## NATURE OF THE ACTION

1. Labcorp brings this action against Defendants for a preliminary and permanent injunction and damages for, among other things, breach of contract caused by Doran's activities in direct competition with Labcorp, all in breach of Doran's covenants not to compete and not to solicit Labcorp customers with whom/which he had contact while employed by Labcorp, and not to disclose Labcorp's confidential information.

2. Doran is bound by a Confidentiality/Non-Competition/Non-Solicitation Agreement with Labcorp (the "Agreement") that expressly prohibits him, for twelve months following the termination of his employment from, *inter alia*, (a) commencing employment with a competitor of Labcorp in which he performs duties and has responsibilities substantially similar or related to the duties he held at Labcorp or its subsidiaries in the geographic areas for which he was responsible during the six month period prior to his termination (the "Geographic

1

Territory"); and (b) soliciting, either directly or indirectly, customers or prospective customers of Labcorp, with whom he had contact at Labcorp over the twenty-four months preceding his separation (the "Customers"), for the purpose of selling, licensing or providing the same or substantially same services offered and/or provided to customers or potential customers of Labcorp. The Agreement also prohibits Doran for seven (7) years following the termination of his employment from disclosing to any third party or using for his own benefit any of Labcorp's confidential information without Labcorp's prior written consent. The non-competition clause, non-solicitation clause, and confidentiality clause shall hereinafter be referred to collectively as the "Restrictive Covenants."

3. Doran voluntarily resigned his employment with Labcorp effective August 23, 2024, and sometime thereafter, in breach of the Agreement, began working for Natera, a direct competitor of Labcorp, performing duties and responsibilities that are the same as, substantially similar, or substantially related to the duties he performed at Labcorp in precisely the same geographic territory for which he was responsible at Labcorp.

4. As an employee of Natera, Doran has been actively soliciting, and continues to actively solicit, the Customers, in an effort to convert their business from Labcorp to Natera.

5. Labcorp has corresponded, through counsel, with Natera to place Natera on express and undeniable notice of the Restrictive Covenants and the Agreement.

6. However, Natera has refused to ensure that Doran adheres to and honors the terms of the Agreement and continues to allow and/or encourage Doran's continued violations of the Restrictive Covenants and the Agreement.

7. As a result of Doran and Natera's actions, which are on-going, Labcorp has suffered, and will continue to suffer, damages and irreparable harm, including, but not limited to, the loss of existing and prospective business, loss of goodwill, and other damages for which there is no adequate remedy at law.

8. An injunction against any further prohibited activities is necessary to prevent such further harm to Labcorp caused by Defendants' unfair and illegal activity which, if it continues unabated, will result in Labcorp losing the Customers and goodwill, which it went to great lengths and expense to protect and preserve, and Labcorp being placed in a competitive disadvantage with respect to the Customers and Natera.

9. Indeed, Doran agreed and acknowledged in the Agreement that Labcorp would be entitled to an injunction if he violated the Agreement:

> [Labcorp] will be placed at a competitive disadvantage in the event that you breach this [Agreement] and that damages would not be an adequate or reasonable remedy in the event of such breach. Accordingly, you stipulate that in the event that you breach one or more of the provisions set forth in this [Agreement], [Labcorp] will be entitled to an injunction restraining you from violating the terms of those paragraphs.

## THE PARTIES

10. Plaintiff Labcorp is a corporation organized under the laws of the State of Delaware with its principal place of business located at 358 South Main Street, Burlington, North Carolina.

11. Upon information and belief, Defendant Doran is a resident of the State of New Jersey with an address at 138 Congress Street, Unit 2, Jersey City, New Jersey.

12. Upon information and belief, Defendant Natera is a corporation organized under the law of the State of Delaware with its principal place of business located at 13011 Mccallen Pass Building A, Suite 100, Austin, Texas. Natera sells, markets, and provides medical

3

analytic and diagnostic testing services (among other services and products) to healthcare providers, hospitals, physician practices, and healthcare providers in North Carolina.

**JURISDICTION, VENUE AND GOVERNING LAW**

13. Pursuant to Paragraph 9(f) of the Agreement, the Agreement is to be "construed in accordance with and governed by the laws of North Carolina, to the exclusion of the laws of any other forum."

14. Paragraph 9(f) further provides for jurisdiction in the State and Federal Courts of North Carolina, stating:

> [Doran] and [Labcorp] irrevocably consent to the jurisdiction of the federal and state courts of North Carolina, and you hereby consent and submit to personal jurisdiction in the State of North Carolina. You [] irrevocably waive any objection, including an objection or defense based on lack of personal jurisdiction, improper venue, or forum non-conveniens . . . .

15. This Court has jurisdiction over this action based on diversity of citizenship pursuant to 28 U.S.C. § 1332. The amount in controversy, exclusive of interest and costs, is in excess of $75,000.

16. Venue and jurisdiction are proper in the United States District Court for the Middle District of North Carolina.

17. This Court has personal jurisdiction over Doran because he consented to such jurisdiction pursuant to Paragraph 9(f) of the Agreement.

18. This Court has personal jurisdiction over Natera because of Natera's general business dealings in North Carolina, including, but not limited to, Natera's sale and provision of medical analytic and diagnosis testing services (among other services and products) to healthcare systems, hospitals, physician practices, and healthcare providers in North Carolina.

# FACTS

### A. Labcorp's Business

19. Labcorp, among other things, provides a variety of diagnostic medical laboratory tests and services, which it markets and sells to medical professionals around the country.

20. Labcorp provides its testing services directly to hospitals, healthcare systems, and physician practices partnering with these healthcare providers to offer tailored testing and diagnostic services that enable these providers to serve their patients' healthcare needs.

21. The market to service healthcare providers is highly competitive, and Labcorp utilizes various sales strategies and other methods to assist it in maintaining and expanding its customer base for the services it offers, including expending significant money and resources to develop and maintain relationships and goodwill with its customers, and to enable its employees to do the same on Labcorp's behalf.

22. Labcorp's sales strategies and plans are highly confidential and only shared with those Labcorp employees who require the information to perform their job functions.

### B. Labcorp Re-Hires Doran, Who Agrees to The Restrictive Covenants

23. On October 15, 2021, Doran accepted an employment offer to re-join Labcorp as a Sales Marketing Executive ("SME"), with a start date of November 1, 2021.

24. In connection with and in consideration for, and as a condition of his employment, Doran was required to sign the Agreement, attached hereto as **Exhibit A**.

25. The Agreement restricts Doran, for a period of twelve months from the date of his separation from Labcorp, from performing the same, substantially similar, or

5

Case 1:24-cv-01029-WO-LPA    Document 1    Filed 12/06/24    Page 5 of 18

substantially related job duties for a competitor of Labcorp in the same geographic areas for which he was responsible while employed at Labcorp. Specifically, Paragraph 5 of the Agreement provides, in relevant part:

> **Non-Competition**: During your employment and for a period of twelve (12) months following your voluntary or involuntary termination of employment, you shall not become an owner in, shareholder with more than 2% equity interest in, investor in, or an employee, contractor, consultant, advisor, representative, officer, director, or agent of, a trade or business that offers products and services that are the same or substantially similar to the products and services provided by [Labcorp] in any geographic market in which [Labcorp] conducts business ("Competitor"): provided, however, that the duties and responsibilities of said employment or engagement as an owner in, shareholder with more than 2% equity interest in, investor in, employee, contractor, consultant, advisor, representative, officer, director or agent are (i) the same, similar, or substantially related to your current duties and responsibilities or duties or responsibilities performed by you while employed by [Labcorp] at any time during a six (6) month period prior to your date of termination and (ii) related to or concerning the Competitor's business activities in the Restricted Territory.[1]

26. "Restricted Territory" is defined as "the geographic area that is part of your . . . duties and responsibilities . . . within a six (6) month period prior to the date of your termination of employment."[2]

27. The Agreement further prohibits Doran from soliciting customers or prospective accounts with whom/which he had contact during his employment at Labcorp. Paragraph 4 of the Agreement provides, in relevant part:

> **Non-Solicitation of Customers.** During your employment and for a period of twelve (12) months following the voluntary or involuntary termination of your employment, you will not either directly or indirectly through a subordinate, co-worker, peer or other person or entity, call upon, contact, or solicit or attempt to call upon, contact or solicit any customer or customer prospect of

---

[1] *See* Exhibit A at 1.

[2] *See* Exhibit A at 1.

[Labcorp], with a view toward the sale or providing of any service or product competitive with the products and services offered by [Labcorp]; provided, however, the restrictions set forth in Paragraph 4 shall apply only to customers or prospects of [Labcorp], or representatives of the same, with which the Employee had contact during the last twenty-four (24) months of your employment with [Labcorp].[3]

28. The Agreement also requires that Doran not disclose any confidential information related to Labcorp or its business practices. Paragraph 2 of the Agreement states, in relevant part:

[F]or a period of seven (7) years from the termination of your employment, you shall not, without the prior written consent of the [Labcorp], divulge to any third party or use for your own benefit, or for any purpose other than the exclusive benefit of the [Labcorp], any Confidential Information of the [Labcorp]. In this Agreement, Confidential Information shall mean information that concerns [Labcorp's] prices, pricing methods, costs, profits, profit margins, suppliers, methods, procedures, processes or combinations or applications thereof developed in, by, or for its business, research and development projects, data, business strategies, marketing strategies, sales techniques, customer lists, customer information, financial information, or any other information concerning [Labcorp] or its business that is not readily and easily available to the public or to those persons in the same business, trade, or industry of [Labcorp].[4]

## C. Doran's Employment Responsibilities at Labcorp

29. While employed by Labcorp as an SME, Doran reported directly to Scott Kagin, who in turn reported to Alissa Farrier

30. In this position, Doran had a variety of duties and responsibilities, including, among others, marketing and selling Labcorp's medical diagnostic testing services to health care providers, including hospital systems, physician practices, and reference labs throughout Manhattan, New York.

---

[3] *See* Exhibit A at 1.

[4] *See* Exhibit A at 1.

31. Doran had a particular focus on women's health, oncology, and organ transplant testing.

32. Doran has intimate knowledge of, among other things, the terms, precise customer desires and concerns, pricing, and what specifically was (and would be) required to entice the Customers to shift their business from Labcorp to Natera.

33. In addition, Doran worked very closely with the Customers to set, pursue, and achieve certain goals, which enabled him to develop and maintain a strong and unique working relationship of trust between himself and the Customers.

34. In addition to the above-described duties, Doran routinely participated in meetings concerning the formulation and implementation of Labcorp sales strategies and plans, which included analysis of the activities of, and competitive threats from, other companies which offer the same or similar products and services as Labcorp, including Natera.

35. As part of his Labcorp employment, Doran had direct access to, was privy to, and was provided highly confidential information about Labcorp's business, including, but not limited to, internal sales strategies, specific pricing information, customer account lists, customer addresses and contacts, and customer preferences and utilization.

36. The confidential information and documents to which Doran was privy during his employment at Labcorp up until his separation, included, among other things, critical components of Labcorp's sales and pricing plans and strategies.

37. All of the above-described information is highly confidential and proprietary information of Labcorp (all together, the "Confidential Information") that was invaluable to Labcorp employees, like Doran, to enable them to be able to successfully perform their required job functions. This information would likewise be invaluable to an employee going

to work for a competitor, and to that competitor, to enable both to more effectively compete with Labcorp. Moreover, it would afford the competitor an unfair business advantage.

**D.     Doran's Resignation and Subsequent Employment with Natera**

38.     Doran resigned from his employment with Labcorp effective August 23, 2024.

39.     Sometime following his resignation from Labcorp, Doran began working for Natera.

40.     Natera, like Labcorp, is a company providing medical diagnostic testing services to healthcare systems, hospitals, physician practices, and other healthcare providers and directly competes with Labcorp.

41.     Specifically, Natera competes with Labcorp to provide these health care providers with medical diagnostic testing services related to Covid-19, clinical chemistry, endocrinology, diabetes, cellular hematology, hematology coagulation, oncology, urinalysis, immunology, and drug screening.

42.     Upon information and belief, Natera also has a particular focus on women's health, oncology, and organ transplant testing.

43.     Upon information and belief, Doran is currently employed as a Clinical Field Specialist at Natera.

44.     Upon information and belief, Doran is performing duties and responsibilities for Natera that are the same as, substantially similar, or substantially related to the duties he performed at Labcorp in the very same sales territories for which he was responsible at Labcorp, including specifically selling Natera's competitive services to the Customers.

45. Since Doran began working for Natera, he has directly solicited at least six Customers of which Labcorp is aware, and, upon information and belief, continues to actively solicit those and other Customers.

46. Doran's actions in violation of the Agreement came to Labcorp's attention on or around October 17, 2024.

47. On October 22, 2024, Labcorp, through counsel, sent certified letters to both Doran and Natera informing them, among other things, of the Agreement, Doran's contractual and legal restrictions therein, and that Doran's direct solicitation of the Customers and other actions constituted direct breaches of the Agreement. Labcorp, in its letter, also requested that Doran immediately cease and desist from breaching the Agreement.

48. On October 30, 2024, Natera, through its in-house counsel, responded to Labcorp's October 22 letter and maintained that its actions were not in breach of the Agreement. Natera claimed that Doran's duties and responsibilities for Natera were not the same as, substantially similar, or substantially related to the duties he performed at Labcorp, nor in the same territories as those for which Doran was responsible at Labcorp.

49. On November 5, 2024, Labcorp, through counsel, responded to Natera's letter clarifying Doran's duties and responsibilities at Labcorp, providing specific zip codes of the territories for which Doran was responsible during his employment, and affirming that Doran was, in fact, breaching the Agreement.

50. Labcorp, through counsel, has continued to correspond with Natera's in-house counsel in a good faith effort to resolve Doran's breaches of the Agreement without having to engage in litigation. Those good faith efforts appear to have failed because Doran has

10

Case 1:24-cv-01029-WO-LPA    Document 1    Filed 12/06/24    Page 10 of 18

continued to actively solicit the Customers in direct violation of the Agreement, and to otherwise violate the terms of the Restrictive Covenants.

## COUNT I – BREACH OF CONTRACT
### (Against Doran)

51. Labcorp incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

52. Doran executed the Agreement pursuant to which he agreed for a period of one year following his employment with Labcorp he would not

> not become an owner in, shareholder with more than 2% equity interest in, investor in, or an employee, contractor, consultant, advisor, representative, officer, director, or agent of, a trade or business that offers products and services that are the same or substantially similar to the products and services provided by [Labcorp] in any geographic market in which [Labcorp] conducts business ("Competitor"): provided, however, that the duties and responsibilities of said employment or engagement as an owner in, shareholder with more than 2% equity interest in, investor in, employee, contractor, consultant, advisor, representative, officer, director or agent are (i) the same, similar, or substantially related to your current duties and responsibilities or duties or responsibilities performed by you while employed by [Labcorp] at any time during a six (6) month period prior to your date of termination and (ii) related to or concerning the Competitor's business activities in the Restricted Territory.

53. Doran is in direct breach of the Agreement by, among other things, performing the same, substantially similar, or substantially related job duties for Natera in the same territory for which he was responsible while employed at Labcorp.

54. Doran further agreed that for a period of one year following his termination of employment, he would not:

> During your employment and for a period of twelve (12) months following the voluntary or involuntary termination of your employment, you will not either directly or indirectly through a subordinate, co-worker, peer or other person or entity, call upon, contact, or solicit or attempt to call upon, contact or solicit any customer or customer prospect of [Labcorp], with a view toward the sale or providing of any service or product competitive with the products and services

11

offered by [Labcorp]; provided, however, the restrictions set forth in Paragraph 4 shall apply only to customers or prospects of [Labcorp], or representatives of the same, with which the Employee had contact during the last twenty-four (24) months of your employment with [Labcorp].

55. Doran is in further breach of the Agreement by directly targeting and soliciting the Customers, attempting to convince them to purchase the same or substantially similar services offered and/or provided by Natera, and attempting to convince them to leave Labcorp and become Natera customers.

56. Doran is also in breach of the Agreement by using the Confidential Information to solicit the Customers as set forth above and to unlawfully compete against Labcorp.

57. Doran's direct and continuing breaches of the Agreement have resulted in damages to Labcorp, including, but not limited to, lost business, in an amount to be proven at trial, but which, upon information and belief, exceeds $75,000.

58. In addition, Doran's direct and continuing breaches have caused Labcorp to suffer, and continue to suffer, other damages and irreparable harm, including, but not limited to, the loss of business, loss of goodwill, and other damages for which, as Doran acknowledged in the Agreement, there is no adequate remedy at law.

**COUNT II – TORTIOUS INTERFERENCE WITH EXISTING CONTRACTUAL AND BUSINESS RELATIONSHIPS**
**(Against Natera)**

59. Labcorp incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

60. There existed a valid contractual relationship between Labcorp and Doran, whose contractual obligations to Labcorp are described above.

61. Natera has knowledge of the contractual relationship between Labcorp and Doran.

62. Through counsel, Labcorp has corresponded multiple times with Natera to place Natera on express and undeniable notice of the contractual relationship at issue.

63. Natera has willingly, knowingly, and intentionally interfered, and continues to do so, with the contractual relationship between Labcorp and Doran.

64. Notwithstanding its knowledge of the contractual obligations Doran owes to Labcorp, Natera has permitted, facilitated, and/or encouraged Doran to engage in conduct in direct violation of those obligations, as he has performed, and continues to perform, competitive duties for, or on behalf of, Natera.

65. There does not exist any justification for the actions of Natera.

66. Natera's conduct has been, and continues to be, intentional, reckless, willful, wanton, and malicious.

67. Natera's interference has resulted in damages to Labcorp, including but not limited to, lost business, in an amount to be proven at trial, but which, upon information and belief, exceeds $75,000.

68. In addition, Natera's interference has caused Labcorp to suffer other damages and irreparable harm, including, but not limited to, the loss of business, loss of goodwill, and other damages for which there is no adequate remedy at law.

**COUNT III - TORTIOUS INTERFERENCE WITH PROSPECTIVE CONTRACTUAL AND BUSINESS RELATIONS**
**(Against Doran and Natera)**

69. Labcorp incorporates by reference all preceding paragraphs of this Complaint as if fully set forth herein.

70. Labcorp has developed significant business relationships with its customers, clients, employees, suppliers, and other entities in the Geographic Territory based on its service, reputation, prior sales efforts, and goodwill that are essential to Labcorp's business. Labcorp has also developed the Confidential Information, which is essential to its success and competitive position in the marketplace. Labcorp's business relations and Confidential Information are valuable assets and have been protected by Labcorp through legal agreements with its employees.

71. Labcorp has valid prospective and potential contractual and business relations with the Customers and new prospective customers in the Geographic Territory based on its service, reputation, prior sales efforts, and goodwill, which have caused Labcorp to have a reasonable expectation of pecuniary benefits from such customers.

72. Doran currently is subject to the Agreement, which contains valid and enforceable Restrictive Covenants.

73. Through counsel, Labcorp has corresponded multiple times with Natera to place Natera on express and undeniable notice of the contractual relationship at issue. As such, Natera was, and is, aware that Doran was, and still is, violating his contractual and legal obligations owed to Labcorp, and unlawfully using the Confidential Information to benefit Natera and afford it an unfair competitive advantage.

74. By permitting Doran to use Labcorp's Confidential Information and encouraging him to actively seek business from the Customers in the Geographic Territory, both in blatant violation of the Restrictive Covenants, Natera has intentionally interfered with Labcorp's existing and prospective business relationships. Defendants' actions have harmed Labcorp's = prospective business interests and relations with the Customers and prospective

customers. Natera engaged in such actions for an improper purpose and by improper methods, including, among other things, intentionally inducing Doran to breach his legal, contractual, and fiduciary obligations to Labcorp, and by using Labcorp's Confidential Information for Natera's benefit in order to improperly compete with Labcorp.

75. Defendants' wrongful actions and interference were done without Labcorp's consent and are improper and unjustified.

76. Upon information and belief, Doran has used Confidential Information to interfere with Customers' and new prospective and potential customers of Labcorp, and induce such Customers and prospective and potential customers to enter into contracts with Natera rather than with Labcorp.

77. Upon information and belief, the Customers would have entered into additional contracts with Labcorp, but-for Defendants' interference.

78. Upon information and belief, new prospective and potential customers would have entered into new contracts with Labcorp, but for Defendants' interference.

79. Defendants' wrongful actions have caused significant harm to Labcorp and its ability to retain the Customers and land future business from the Customers and other prospective customers.

80. Defendants' wrongful actions and interference have caused damages to Labcorp, including but not limited to, loss of prospective and potential contracts and business relations in an amount to be proven at trial.

81. Labcorp is entitled to recover compensatory damages, including any lost profits and actual damages resulting from Defendants' interference.

82. In addition, Defendants' wrongful actions and interference have caused Labcorp to suffer other damages and irreparable harm, including, but not limited to, the loss of business relations, goodwill, and other damages for which there is no adequate remedy at law.

**WHEREFORE**, Plaintiff Laboratory Corporation of America Holdings demands judgment in its favor and against Defendants Paul Doran and Natera, Inc. as follows:

(a) Granting a temporary restraining order, temporary injunction, and preliminary and permanent injunction enjoining and restraining Doran and Natera from violating the terms of the Agreement by, among other things:

(1) Performing, on behalf of a direct competitor of Labcorp, including but not limited to Natera, duties and responsibilities that are the same, substantially similar, or substantially related to the duties or responsibilities he performed during the six-month period preceding the termination of his employment with Labcorp within the Restricted Territory;

(2) Directly or indirectly contacting, soliciting, or communicating with a customer or potential customer of Labcorp within the Restricted Territory with whom/which he had contact during the twenty-four-month period preceding the termination of his employment with Labcorp, for the purpose of offering, selling, or providing services or products that are competitive with the services and products offered and/or provided to that customer or potential customer by Labcorp;

(3) Tortiously interfering with Labcorp's existing and prospective contractual and business relationships with the Customers and prospective customers within the Restricted Territory;

(b) Awarding compensatory, consequential and punitive damages to Plaintiff in an amount that exceeds $75,000, and any and all costs and expenses in this litigation, including reasonable attorneys' fees;

(c) Awarding pre-judgment and post-judgment interest to Labcorp; and

(d) Awarding such other and further relief as this Court may deem just and appropriate.

## JURY DEMAND

Wherefore, Plaintiff demands a trial by jury on the within causes of action.

This the 6th day of December 2024.

                                     **K&L GATES LLP**

By: /s/ Leann M. Walsh
Leann M. Walsh
North Carolina State Bar No. 53845
K&L Gates LLP
301 Hillsborough Street, Suite 1200
Raleigh, North Carolina 27603
Telephone: (919) 743-7300
E-mail: leann.walsh@klgates.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was filed electronically in accordance with local rules and was therefore served electronically on those entities that have properly registered for such electronic service and by United States Mail, first class for those entities not registered for electronic service.

Paul Doran
138 Congress Street, Unit 2
Jersey City, New Jersey 07307

Natera, Inc.
13011 McAllen Pass Suite 100
Austin, Texas 78753

Submitted this 6th day of December 2024

                                     **K&L GATES LLP**

By:    /s/ Leann M. Walsh
        Leann M. Walsh
        North Carolina State Bar No. 53845
        K&L Gates LLP
        301 Hillsborough Street, Suite 1200
        Raleigh, North Carolina 27603
        Telephone: (919) 743-7300
        E-mail: leann.walsh@klgates.com

*Counsel for Plaintiff*